**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

AUG 2 0 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

JOCELYN J. MONTON,
and

JOSELITO MONTON,

       **Plaintiffs,**

v.                              **Civil No.2:11cv678**

AMERICA'S SERVICING COMPANY,
and

SAMUEL I. WHITE, P.C.,

       **Defendants.**

## OPINION AND ORDER

This matter, initially filed in the Circuit Court for the City of Virginia Beach, Virginia, by Jocelyn Monton and Joselito Monton (collectively, "Plaintiffs"), was removed to this Court by defendant America's Servicing Company ("ASC")[1] with the consent of defendant Samuel I. White, P.C. ("the Substitute Trustee") (collectively, "Defendants"). Such removal was on the basis of both diversity jurisdiction and federal-question jurisdiction. Currently pending before the Court are Defendants' motions to dismiss the Amended Complaint, as well as

---

[1] Defendant ASC indicates that ASC is a division of Wells Fargo Home Mortgage, Inc., which was merged into Wells Fargo Bank, N.A., and that Wells Fargo Bank, N.A. is a citizen of South Dakota. Removal Notice 1, ECF No. 1. Plaintiffs, who are citizens of Virginia, do not challenge such jurisdictional facts.

Plaintiffs' later filed motion for leave to file a Second Amended Complaint and motion to remand.[2]

Defendants oppose Plaintiffs' request for leave to file a Second Amended Complaint and oppose the motion for remand, urging the Court to dismiss this matter on the merits, primarily because Plaintiffs' claims are predicated on the Home Affordable Modification Program ("HAMP"), a federal program which provides loan modification regulations, but does not provide borrowers a private right of action for alleged HAMP violations. Plaintiffs failed to file a brief in opposition to any of the pending motions to dismiss.

For the reasons set forth below, the Court **DENIES** Plaintiffs' motion to remand as the Court finds that it has diversity jurisdiction over this matter. Having found that subject-matter jurisdiction exists, as discussed below, the Court **GRANTS** Defendants' unopposed motions to dismiss, and **DENIES** Plaintiffs' motion to amend as futile.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs' original Complaint alleges detailed facts in support of the relief sought therein, whereas Plaintiffs' Amended Complaint is essentially devoid of facts. Plaintiffs'

---

[2] Plaintiffs also request an award of attorney's fees associated with the motion to remand; however, Plaintiffs fail to file a separate motion seeking such relief.

motion for leave to file a <u>Second</u> Amended Complaint is based on Plaintiffs' inadvertent omission of facts from their Amended Complaint.  Because Plaintiffs failed to attach a copy of their proposed Second Amended Complaint to their motion for leave to amend, the Court cannot analyze such proposed filing.  However, as discussed herein, even if the Court considers the facts erroneously omitted from the Amended Complaint, Defendants' motions to dismiss Plaintiffs' pleadings are meritorious, rendering any amendment futile.

Summarizing the facts as stated in the original Complaint, Plaintiffs executed a Deed of Trust ("DOT") and Promissory Note in June of 2006 in order to obtain a mortgage loan for a home in Virginia Beach, Virginia.  Compl. ¶ 5, ECF No. 1-3.  In September of 2010, Mr. Monton was laid off from his job, leading Plaintiffs to miss a mortgage loan payment in October of 2010. <u>Id.</u> ¶ 12.  After missing such loan payment, Plaintiffs immediately contacted ASC to ask for assistance. <u>Id.</u> Plaintiffs thereafter submitted to ASC several HAMP applications seeking a loan modification. <u>Id.</u> ¶ 14.  However, none of Plaintiffs' attempts to modify their loan were successful, and ASC scheduled a foreclosure sale of Plaintiffs' home. <u>Id.</u> ¶¶ 15-17.

Plaintiffs filed their original Complaint in advance of such scheduled foreclosure, and the record before the Court

3

suggests that the foreclosure sale has not yet occurred. The Amended Complaint, submitted several months after the original Compliant, includes virtually no facts, but similarly implies that a foreclosure sale had not occurred. Amend. Compl. ¶¶ 10, 12, ECF No. 17.

Subsequent to removal of the case to this Court, Defendants each filed a motion to dismiss the original Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs did not file responsive briefs, but instead filed their Amended Complaint. Defendants then jointly filed a second motion to dismiss the Amended Complaint. Plaintiffs again failed to file a brief in opposition to the newly filed dismissal motion. Thereafter, Plaintiffs filed a motion seeking leave to amend/correct their Amended Complaint in order to add facts inadvertently omitted from such pleading. Plaintiffs also filed a motion to remand this matter to state court based on this Court's purported lack of subject-matter jurisdiction. All of the pending motions discussed above are now ripe for review.

## II. STANDARD OF REVIEW

### A. Subject-Matter Jurisdiction

In order for this Court to have "federal question" jurisdiction, the matter must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. According to the United States Court of Appeals for the Fourth

Circuit, "[t]here is no 'single, precise definition' of what it means for an action to 'arise under' federal law." Verizon Md., Inc. v. Global Naps, Inc., 377 F.3d 355, 362 (4th Cir. 2004) (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808, (1986)). However,

> [t]he Supreme Court has recognized § 1331 jurisdiction in a variety of cases, such as (1) when a federal right or immunity forms an essential element of the plaintiff's claim; (2) when a plaintiff's right to relief depends upon the construction or application of federal law, and the federal nature of the claim rests upon a reasonable foundation; (3) when federal law creates the cause of action; and (4) when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.

Id. (internal citations and quotations omitted).

In addition to federal-question jurisdiction, a litigant may invoke this Court's "diversity jurisdiction." Pursuant to federal statute, this Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Being a court of limited jurisdiction, this Court must address the challenge to its subject-matter jurisdiction before considering any of the other pending motions. See Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) ("It is well established that before a federal court can decide the merits of

a claim, the claim must invoke the jurisdiction of the court."). If this Court "concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). This principle is embodied in Rule 12(h)(3) of the Federal Rules of Civil Procedure, which provides that "[i]f the court determines <u>at any time</u> that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) permits a defendant to move for dismissal when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing such a motion, a district court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Mkts., Inc. v. J.P. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). While a district court must construe the facts in the light most favorable to the plaintiff, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

6

After viewing the facts in plaintiff's favor, a complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To satisfy such plausibility standard the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557) (indicating that "'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief'"). As always, the above standard is applied in light of Rule 8(a)'s requirement of only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

7

## III. DISCUSSION

### A.  Motion to Remand

Defendants justified the removal of the case to this Court based on <u>both</u> federal-question jurisdiction and diversity jurisdiction.  This Court has repeatedly held that HAMP claims similar to Plaintiffs' claims are insufficient to invoke federal-question jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Mosley v. Wells Fargo Bank, N.A.</u>, 802 F. Supp. 2d 695, 698-99 (E.D. Va. 2011). However, the Court need not revisit such analysis herein because, as discussed below, the Defendants have properly invoked this Court's diversity jurisdiction.

### 1. Amount in Controversy

Considering first the amount in controversy component of diversity jurisdiction, Plaintiffs assert that the amount in controversy is less than $75,000 because the original Complaint did not seek monetary damages, and the Amended Complaint only seeks $30,000 in damages.[3]  Defendants, however, argue that the jurisdictional calculus does not turn solely on the money damages sought, and highlight the fact that Plaintiffs' complaints seek injunctive relief involving a home mortgage well in excess of $300,000.

---

[3] Plaintiffs do not contend that their pending motion seeking leave to file a Second Amended Complaint would have any impact on the jurisdictional calculus.

Defendants are correct that "like requests for money damages, requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 639 (4th Cir. 2010). Accordingly, in lawsuits "seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (emphasis added).

Plaintiffs' home mortgage loan that they sought to modify under HAMP required interest-only payments for a period of ten years and began in June of 2006 with a balance of $371,902. ECF No. 3-2, at 7.[4] Such fact, by itself, appears sufficient to demonstrate that the amount in controversy is exceeded in this case based on the apparent value of Plaintiffs' real property, even assuming such value substantially decreased between 2006 and 2011 due to market conditions. See Sherman v. Litton Loan Servicing, 796 F. Supp. 2d. 753, 766 (E.D. Va. 2011) (holding in a HAMP case that the "manifest fact that the value of the

---

[4] It is appropriate for the Court to consider evidence outside the pleadings in determining whether it has subject-matter jurisdiction. Velasco v. Government of Indonesia, 370 F.3d 392, 398 (4th Cir. 2004). Furthermore, in ruling on the pending motions to dismiss, the Court may consider the Note and DOT as such documents are "integral to the complaint" and there is no dispute as to their authenticity. Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Property exceeds $75,000" was sufficient to satisfy the jurisdictional threshold); Peterson v. Sucro, 93 F.2d 878, 882 (4th Cir. 1938) (indicating that "in suits to quiet title or actions in ejectment, the amount in controversy is the value of the whole of the real estate to which the claim extends and not the value of defendant's claim") (internal quotation marks and citations omitted).

Even if the above facts were insufficient to establish the jurisdictional threshold amount in controversy, in addition to seeking to halt the foreclosure of their home, Plaintiffs' Amended Complaint also seeks an order requiring ASC to specifically perform a loan modification. The relevant documents before the Court establish that, under their current loan, Plaintiffs are required to make monthly interest-only mortgage payments of $2,130 from 2006 to 2016. ECF No. 3 Exh. 2, at 7. Interest and principal payments would then be due for a period of twenty years. Id. Because Plaintiffs' suit seeks a Court order that would require ASC to stop receiving such contracted for payments, and instead accept a lesser amount, it is apparent that the instant controversy, implicating the remaining life of the loan, involves payments to ASC where the

.

interest alone would be far in excess of $75,000.[5] See Frashier, 624 F.3d at 639 (indicating that the jurisdictional calculus may consider "future value generated by injunction"). Finally, the Court notes that because the Amended Complaint seeks $30,000 in money damages, the value of the injunctive relief sought by Plaintiffs need only be more than $45,000 to meet the jurisdictional threshold. Id. (citing Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995)) ("[P]laintiffs may aggregate smaller claims in order to reach the jurisdictional threshold."). For all of the above reasons, the Court concludes that the amount in controversy is in excess of the jurisdictional threshold.

### 2. Diversity

The Court next considers whether complete diversity exists. It is undisputed that Plaintiffs and defendant ASC are completely diverse, but the Substitute Trustee, like Plaintiffs, is a citizen of Virginia. However, in line with several recent decisions from this district, this Court finds that because a foreclosure sale has not yet occurred, the citizenship of the Substitute Trustee is immaterial under the doctrine of fraudulent joinder. See Jones v. Bank of America, N.A., No. 2:11cv443, 2012 WL 405053, at *4 (E.D. Va. Feb. 7, 2012); Kenny

---

[5] It appears that in the four years remaining in the "interest-only period," ASC is scheduled to receive approximately $100,000 in interest payments.

v. Bank of America, N.A., No. 4:11cv120, 2011 WL 6046452, at *4
(E.D. Va. Dec. 5, 2011).

Under the doctrine of fraudulent joinder, "a district court
can assume jurisdiction over a case even if . . . there are
nondiverse named defendants at the time the case is removed."
Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).  The
burden is on the party claiming fraudulent or improper joinder
to show that there has been either outright fraud in the
pleading of jurisdictional facts--which is not at issue here--or
that a claim could not be established against the non-diverse
defendant even after resolving all issues of law and fact in
favor of the plaintiff.  Marhsall v. Manville Sales Corp., 6
F.3d 229, 232-33 (4th Cir. 1993); see Mayes, 198 F.3d at 461 n.8
(indicating that the "term 'fraudulent joinder' is a bit
misleading, inasmuch as the doctrine requires neither a showing
of fraud nor joinder") (internal citations omitted).

Federal district court decisions diverge, based at least in
part on various states' substantive laws, as to whether the
citizenship of a substitute trustee is properly taken into
account in determining whether complete diversity of citizenship
exists among the opposing parties.  See Sherman, 796 F. Supp.
2d. at 759-60 (collecting cases).  However, what is clear from
these divergent decisions is that the status of a substitute
trustee hinges on the nature of the actions allegedly taken by

the trustee, if any, and the type of relief sought against the trustee, if any. Compare Payne v. Bank of America, N.A., No. 3:09cv80, 2010 WL 546770, at *3-5 (W.D. Va. Feb. 11, 2010) (holding a substitute trustee to be properly joined when the plaintiff made extensive factual and legal allegations against the trustee and sought specific relief from the trustee--namely, setting aside a previously conducted foreclosure sale and re-titling the property at issue); with Jones, 2012 WL 405053, at *3-4 (concluding that the substitute trustee was improperly joined as no foreclosure sale had occurred and the trustee had no part to play in the bank's loan modification decision); but cf. Dempsey v. Transouth Mortg. Corp., 88 F. Supp. 2d 482, 484-85 (W.D.N.C. 1999) (holding that the substitute trustee was only a nominal party notwithstanding foreclosure, and thus, its citizenship did not impact the jurisdictional calculus).

Here, although Plaintiffs' Amended Complaint repeatedly mentions the Substitute Trustee, it only does so within conclusory legal statements involving alleged breaches of duties purportedly owed to Plaintiffs. What is lacking from the Amended Complaint, and the original Complaint, are facts that would support a cause of action against the Substitute Trustee. Plaintiffs do state in their original Complaint that "ASC intends there to be a foreclosure . . . and will expect [the Substitute Trustee] to foreclose on the home." Compl. ¶ 17, ECF

13

No. 1-3 (emphasis added). However, Plaintiffs never set forth a single act (or omission) taken by the Substitute Trustee, nor do they allege that a foreclosure sale of Plaintiffs property has occurred. Accordingly, the factual allegations before this Court are far closer to those in Jones, and Kenny, than the facts in Payne, where a foreclosure sale had already been completed, and the plaintiff sought to have the property re-titled. The Court therefore finds that the citizenship of the Substitute Trustee should not be considered for the purposes of the jurisdictional calculus. Mayes, 198 F.3d at 461 (indicating that the doctrine of fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants").[6] Based on such finding, diversity exists in this case.

---

[6] As the district court noted in Payne, in addition to the question of improper or fraudulent joinder, there exists "a related but not identical doctrine" providing that "in the Court's inquiry into diversity jurisdiction, [the citizenship of] 'nominal' or 'formal' parties that have been joined are to be disregarded and only [the citizenship of] 'real parties to the controversy' are considered relevant." Payne, 2010 WL 546770, at *4 (quoting Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980)). The district court in Payne further noted that although the Fourth Circuit has not yet explicitly articulated a test for determining whether a party is "nominal" or "formal," other courts have regarded the standard as being essentially the same as that for fraudulent joinder. Id. Although this Court does not perform a separate and detailed inquiry into whether the Substitute Trustee was merely a "nominal" or "formal" party, were the Court to engage in such inquiry, the conclusion would be the same as the conclusion reached above because the Trustee has no substantive role in the instant dispute.

Because the facts before the Court satisfy the statutory threshold for diversity jurisdiction, and because Defendants have carried their burden to demonstrate that the Substitute Trustee was improperly joined, the Court finds that it has subject-matter jurisdiction over this case, and Plaintiffs' motion to remand for lack of jurisdiction is therefore denied. Based on such denial, Plaintiffs' informal request for attorney's fees is also denied.

### B. Motion to Dismiss

Defendants each separately filed a motion to dismiss the original Complaint and jointly filed a motion to dismiss the Amended Complaint. Plaintiffs filed no response in opposition to any of these motions, but rather, now ask the Court for leave to file another amended complaint. Because Plaintiffs failed to attach a copy of their proposed Second Amended Complaint to such motion, the Court focuses its analysis on the viability of the legal claims set forth in Plaintiff's Amended Complaint. For the reasons discussed below, even assuming that Plaintiff's Amended Complaint were corrected to include the facts pled in the original Complaint, such pleading would fail to state a claim on which relief can be granted. Therefore, as discussed below, Defendants' unopposed motions to dismiss the original Complaint and Amended Complaint are granted.

### 1. HAMP does not Create a Private Right of Action

This Court has consistently held there is no private right of action for individual borrowers to assert claims against lenders for violations of HAMP.  See Mosley, 802 F. Supp. 2d at 699; Sherman, 796 F. Supp. 2d at 761; Melton v. Suntrust Bank, 780 F. Supp. 2d 458, 459 (E.D. Va. 2011); see also Bourdelais v. J.P. Morgan Chase, No. 3:10cv670, 2011 WL 1306311, at *3 (E.D. Va. Apr. 1, 2011) (collecting cases).  Therefore, any claims that allege a violation under 12 U.S.C. § 5219(a)(1)--HAMP's implementing statute--should be dismissed.  Here, it appears that Plaintiffs may be attempting to couch HAMP violation claims as claims advanced under state law in order to circumvent the fact that no private right of action exists under HAMP. Although this Court is skeptical of such characterizations, the Court will proceed to individually assess each of Plaintiffs' state law claims.[7]

### 2. State Law Claims

#### a. Breach of Contract Arising from the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs assert that Defendants violated the implied covenant of good faith and fair dealing under the Promissory Note by failing to properly consider Plaintiffs for loan

---

[7] This Court applies Virginia law in its analysis of Plaintiffs' state law claims.  See Felder v. Casey, 487 U.S. 131, 151 (1988); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

16

modification pursuant to the "public policy of the United States" as "enacted [under] 12 U.S.C. § 5219(a)(1)." Amend. Compl. ¶¶ 5-13, ECF No. 17.

The United States Court of Appeals for the Fourth Circuit has recognized that contracts governed by Virginia law generally contain an implied covenant of good faith and fair dealing. Va. Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 541-42 (4th Cir. 1998); see SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina, 806 F. Supp. 2d 872, 893-95 (E.D. Va. 2011) (examining at length how state and federal courts in Virginia have acknowledged an implied duty of good faith and fair dealing in contractual relationships, and finding no reason to differentiate between contracts falling under the Uniform Commercial Code ("U.C.C.") and the common law); Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33 (1996) (indicating that under Virginia law, breach of the U.C.C.'s implied covenant of good faith and fair dealing gives rise to a cause of action for breach of contract). However, it is well-established that "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." Ward's Equip. v. New Holland N. Am., 254 Va. 379, 385 (1997) (emphasis added). As explained by the Fourth Circuit, "although the duty of good faith [under Virginia law] does not prevent a party from

17

exercising its <u>explicit contractual rights</u>, a party may not exercise <u>contractual discretion</u> in bad faith, even when such discretion is vested solely in that party." <u>Vermiculite</u>, 156 F.3d at 542 (emphasis added).

Therefore, the implied covenant of good faith and fair dealing is "simply a recognition of conditions inherent in expressed promises." <u>Eastern Shore Mkts.</u>, 213 F.3d at 184. To that end, the covenant does not compel a party to take affirmative action not otherwise required under the contract, does not establish independent duties not otherwise agreed upon by the parties, and cannot be invoked to undercut a party's express contractual rights. <u>De Vera v. Bank of Am., N.A.</u>, No. 2:12cv17, 2012 WL 2400627, at *3 (E.D. Va. June 25, 2012).

Here, Plaintiffs argue that Defendants breached the implied covenant of good faith and fair dealing by failing to postpone foreclosure until an underwriter could evaluate Plaintiffs' application(s) for loan modification. However, the undisputed evidence demonstrates that Plaintiffs failed to satisfy their contractual obligations under the Promissory Note and the DOT. As a result of such failure, ASC had <u>the express contractual right</u> to accelerate payment and foreclose on the property. Plaintiffs have failed to point to any "discretion" under the Promissory Note or the DOT that Defendants exercised in bad faith. Similarly, neither the Promissory Note nor the DOT

created an express duty on ASC to facilitate loan modification in the event Plaintiffs fell into arrears on their obligation to make timely payments.  See Stanley's Cafeteria Inc. v. Abramson, 226 Va. 68, 73 (1983) (quoting Warren v. Goodrich, 133 Va. 366, 389 (1922)) (holding that an agreement to modify a contract must be proven by "'clear, unequivocal and convincing evidence, direct or implied'").  Moreover, the Substitute Trustee could not have breached any implied duty allegedly owed pursuant to the Promissory Note or the DOT because the Trustee was not a contractual party thereto.

Plaintiffs' breach of contract claim arising from the implied covenant of good faith and fair dealing therefore fails because, without evidence of ASC exercising contractual discretion in bad faith, the Promissory Note and the DOT expressly provided ASC the right to accelerate payment of the loan and ultimately foreclose on the property.  Therefore, Plaintiffs' first claim is dismissed for failure to state a claim on which relief can be granted.

### b. Duty to Mitigate Damages

Plaintiffs assert that Defendants breached the duty to mitigate damages by failing to properly review Plaintiffs for loan modification.  Amend. Compl. ¶¶ 14-16, ECF No. 17.  The Virginia Supreme Court has "long recognized the obligation of an injured party to mitigate damages."  Forbes v. Rapp, 269 Va.

374, 380 (2005).  However, an assertion that an injured party has failed to mitigate damages is an affirmative <u>defense</u>.  <u>See</u>, <u>e.g.</u>, <u>R.K. Chevrolet, Inc. v. Bank of the Commonwealth</u>, 256 Va. 74, 77 (1998); <u>Marefield Meadows, Inc. v. Lorenz</u>, 245 Va. 255, 266 (1993).  The injured party's common law duty to mitigate damages requires the injured party to "'exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage.'"  <u>Lawrence</u>, 226 Va. at 412 (quoting <u>Haywood v. Massie</u>, 188 Va. 176, 182 (1948)).  Although failure to exercise reasonable care and diligence may be a reason for <u>reducing damages</u>, it does not bar all recovery.[8]  <u>Id.</u>

Here, Plaintiffs argue that because foreclosure is a damage remedy stemming from the Plaintiffs' breach of the Promissory Note and DOT, then as a matter of law, Defendants have a duty to mitigate damages by considering an application for loan modification.  However, a proper understanding of an allegation that a party breached its duty to mitigate damages and should be precluded from obtaining additional damages as a result, reveals

---

[8] For example, when a purchaser has breached a contract for the sale of real estate, the seller has the duty of making <u>reasonable efforts</u> to mitigate damages resulting from the breach, and to the extent that the breaching party shows that the seller--the injured party--failed to do so, the breaching party may avoid <u>a portion of the resulting damages</u>.  <u>See</u> <u>Lawrence v. Wirth</u>, 226 Va. 408, 412-13 (1983); <u>Haywood</u>, 188 Va. at 181-83; <u>see also</u> Restatement (Second) of Contracts § 350, cmt. b. (1981); Charles T. McCormick, <u>Handbook on the Law of Damages</u> § 33 (1935).

the lack of force behind Plaintiffs attempt to affirmatively state a claim against Defendants under such defensive remedy. Notably, Plaintiffs' attempt to impose on Defendants a non-contractual duty regarding loan modification finds no support in the common law, and any duty to mitigate that Defendants may have cannot act to trump their express contractual right to foreclose once Plaintiffs fell into arrears. In other words, the common law duty to mitigate damages is not a categorical prohibition on foreclosure, rather, the duty simply requires reasonableness under the circumstances.

Plaintiffs' attempt to state an affirmative cause of action for breach of the duty to mitigate damages is nothing more than an attempt to couch a HAMP violation--which provides no private right of action--under a different name. Jones, 2012 WL 405053, at *6 n.8. Although loan modification and foreclosure may each have been options for ASC, the common law duty Plaintiffs seek to invoke does not eviscerate ASC's express contractual right to opt to initiate foreclosure proceedings. Consequently, Plaintiffs' claim for breach of the duty to mitigate damages is dismissed.

### c. Breach of the Deed of Trust

Plaintiffs assert that Defendants' breached the DOT by failing to comply with the implementing statute of HAMP, and that the Substitute Trustee violated HAMP by scheduling a

foreclosure sale before waiting for certification that the Plaintiffs' loan modification application had been reviewed and denied. Amend. Compl. ¶¶ 17–23, ECF No. 17.

However, as stated above, no matter how such a claim is phrased, homeowner borrowers simply do not have a private right of action against a lender for an alleged violation of HAMP. Plaintiffs, therefore, cannot establish a breach of the DOT through reliance on HAMP. De Vera, 2012 WL 2400627, at *5; see Jones, 2012 WL 405053, at *6 n.8 (finding the plaintiffs' second motion to amend to be futile because the breach of the deed of trust claim, inter alia, was nothing more than an innovative attempt to couch an alleged HAMP violation under a different name). Furthermore, Plaintiffs do not state a plausible right to relief based on the fact that the DOT, expressly or implicitly, requires ASC to exhaust any loan modification process prior to instituting foreclosure proceedings. As a result, Plaintiffs' claim for breach of the DOT is dismissed.

### 3. Injunctive Relief

Plaintiffs seek a preliminary injunction or temporary restraining order to "preserve the status quo until the complaint can be reviewed and the matter adjudicated." Amend. Compl. ¶ 24, ECF No. 17. The substantive standard for granting a preliminary injunction is the same as the standard for entering a temporary restraining order. Moore v. Kempthorne,

22

464 F. Supp. 2d 519, 525 (E.D. Va. 2006). In order for the Court to grant such relief, the moving party must demonstrate: (1) he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

As repeatedly stated throughout this opinion, it is well-established that there is no private right of action for individual borrowers against lenders for purported HAMP violations. See Mosley, 802 F. Supp. 2d at 699. Plaintiffs' complaints, even if viewed collectively, fail to adequately plead claims for breach of implied covenants, breach of the duty to mitigate damages, or breach of the DOT. Plaintiffs, therefore, cannot establish that they are likely to succeed on the merits. Thus, Plaintiffs' request for a preliminary injunction or temporary restraining order is dismissed for failure to state a claim on which relief can be granted.[9]

### C. Motion to Amend

Plaintiffs filed a motion seeking leave to file a Second Amended Complaint in the event that the Court retains jurisdiction over this case. Mo. for Leave, ECF No. 25.

---

[9] Alternatively, the motion for a preliminary injunction is dismissed as moot because the Court's ruling herein terminates the case in favor of Defendants.

Plaintiffs failed, however, to attach a copy of a proposed Second Amended Complaint to such motion. Nevertheless, Plaintiffs explain in their brief in support that Plaintiffs seek "leave to file the Second Amended Complaint solely on the ground that the Amended Complaint inadvertently omitted allegations of necessary facts, and sets forth only Plaintiff's legal causes of action." Id. at 3.

The Federal Rules of Civil Procedure provide that district courts should freely allow amendment, Fed. R. Civ. P. 15(a)(2), and leave to amend a complaint is generally only denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile," Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). An amendment is considered futile if "the amended complaint could not survive a Rule 12(b)(6) motion by the party opposing the amendment." Norfolk & Portsmouth Belt Line R. Co. v. M/V Marlin, No. 2:08cv134, 2009 WL 1974298, at *2 (E.D. Va. Apr. 3, 2009) (citing United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008)).

Here, Plaintiffs' request for leave to amend is denied as futile. Incorporating the facts as set forth in the original Complaint solves one problem with the Amended Complaint, but fails to alter this Court's analysis regarding the merits of

24

Defendants' unopposed motion to dismiss. Accordingly, Plaintiffs' motion for leave to amend is denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is **DENIED** as Defendants properly invoked this Court's diversity jurisdiction. Defendants' unopposed motions to dismiss the original Complaint and Amended Complaint are **GRANTED,** and Plaintiffs' claims are **DISMISSED** with prejudice. Plaintiffs' recently filed motion for leave to amend is **DENIED** as futile.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 20 , 2012